**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MELISSA ANN SLAUGHENHOUPT,    )
    )
    *Plaintiff*    )
    )
    )    **Civ. No. 15-1345**
    )
COMISSIONER OF SOCIAL SECURITY    )
ADMINISTRATION,    )
    )
    *Defendant*    )
    )

## OPINION AND ORDER

Pending before the Court are the parties' cross-motions for summary judgment [ECF 9 and 11].

## I.  BACKGROUND

Plaintiff Melissa Ann Slaughenhoupt ("Plaintiff") filed a claim for disability insurance benefits on December 19, 2012, alleging disability since October 1, 2011 due to bulging disks in neck, fibromyalgia, asthma and allergies. R. 63. Plaintiff's claim was denied initially and upon hearing before an administrative law judge ("ALJ"). In denying her claim for benefits by Decision dated August 5, 2014, the ALJ determined that Plaintiff had the following severe impairments: "cervical degenerative disc disease with cervical fusion, asthma, chronic obstructive pulmonary disease (COPD), bronchitis, rhinitis, vocal cord polyps, reflux esophagitis, duodenal erosion, hiatal hernia, bile gastritis, status-post cholecystectomy, attention deficit hyperactivity disorder (ADHD), and depression, but that she was not disabled under the Social Security Act because she had "the residual functional capacity to perform sedentary work

as defined in 20 CFR 404.1567(a) except the claimant can never climb a ladder, rope, or scaffold; can never crawl; can only occasionally climb ramps and stairs; can only occasionally balance, stoop, kneel, or crouch; can only occasionally reach overhead, bilaterally, but with no other reaching limitations; will require a sit/stand option at the work station with intervals no more frequent that every 30 minutes; must avoid even moderate exposure to gases, fumes, and like respiratory irritants; must avoid concentrated exposure to temperature extremes, wetness, and humidity; must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards; will require a workplace with restroom access; is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks; is limited to only occasional and superficial interaction with coworkers and the public, with no transactional interaction such as sales or negotiations; and is limited to a low stress work environment, which means no production rate pace work, but rather, goal oriented work with only occasional and routine change in work setting," and that considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. R. 13, 16, 19-20. The Appeals Council denied Plaintiff's request for review and this appeal followed.[1]

For the following reasons, the Motion for Summary Judgment filed by Defendant, Commissioner of Social Security ("Defendant" or "the Commissioner"), will be granted and the Plaintiff's Motion for Summary Judgment will be denied.

## II. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. <u>Allen v. Bowen</u>, 881 F.2d 37, 39 (3d Cir. 1989).

---

[1] Plaintiff does not challenge the ALJ's findings with regard to her mental limitations. As a result, this Opinion is limited to a discussion of the alleged errors regarding her physical impairments.

Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive, even if the court would have decided the factual inquiry differently. 42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether

the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer, 995 F. Supp. at 552; S.E.C. v. Chenery Corp., 332 U.S. 194, 196-97, 67 S. Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457, 2011 WL 2036692 (E.D. Pa. Apr. 14, 2011) (citations omitted).

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

### III. LEGAL ANALYSIS

In her Motion for Summary Judgment and supporting brief, Plaintiff contends that there is not substantial evidence in the Record to support the Commissioner's finding that she is not disabled and in support thereof, makes two main arguments. First, Plaintiff argues that the ALJ failed to properly assess the medical evidence of record, including the medical evidence concerning Plaintiff's bilateral knee pain and the various opinions of Plaintiff's treating doctors and their support staff. Brief for Plaintiff ("Plaintiff's Supporting Brief"), pp. 5-14. Second, Plaintiff contends that the ALJ did not adequately explain why he concluded that Plaintiff's testimony at the ALJ hearing was less than fully credible and that the medical evidence establishes an adequate foundation for Plaintiff's testimony. Id. at pp. 14-15.

To the contrary, in her Motion for Summary Judgment and supporting brief, Defendant Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff was not disabled within the meaning of the Social Security Act on or before the date of the ALJ's decision. Defendant's Brief in Support of Motion for Summary Judgment ("Defendant's Supporting Brief").

Plaintiff has filed a Reply Brief in response to Defendant's Supporting Brief. Reply Brief for Plaintiff ("Plaintiff's Reply Brief").

A. **Whether the ALJ failed to properly assess the medical evidence of record?**

The Court turns first to Plaintiff's argument that the ALJ failed to properly assess the medical evidence of record, including the medical evidence concerning Plaintiff's bilateral knee pain and the various opinions of Plaintiff's treating doctors and their support staff.

**1. The ALJ's evaluation of Plaintiff's bilateral knee pain.**

With respect to Plaintiff's bilateral knee pain, the ALJ stated in relevant part:

During the hearing the claimant testified to significant right knee pain for at least five years with her knee frequently collapsing, causing trouble standing, and walking. While she testified to significant knee problems, the objective medical records do not support these allegations. She reported right knee pain of a few weeks duration after a fall to her orthopedic physician, Dr. Jurenovich in July 2012. On exam, the claimant's knee was swollen with moderate medial joint line tenderness. An x-ray was normal, so Dr. Jurenovich ordered an MRI (Exhibit 2F/9). She did not follow up on this treatment suggestion for over six months, and then MRIs of the knees showed only very mild chondromalacia of the right knee with no internal derangement and a tiny popliteal cyst and very mild chondromalacia of the left knee (Exhibit 11F/3-4). The claimant underwent a series of Synovisc injections in the knees with good results and no longer complained about knee pain after the last injection in April 2013 (Exhibit 11F). The claimant has not reported knee pain to any of her physicians in over a year, and imaging studies showed no more than mild changes in the knees. Thus, there is no evidence that the claimant's alleged knee pain causes more than minimal limitations on her ability to perform basic work activities and is non-severe in nature.

R. 14.

Plaintiff argues that the ALJ erred when he found that Plaintiff's bilateral knee pain was not severe and that the severe nature of this impairment is shown through the treatment records of Dr. Michael Jurenovich, D.O. ("Dr. Jurenovich"), Plaintiff's treating orthopedist. Plaintiff's Supporting Brief, p. 11.

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

Upon review of the evidence of record, I find that the ALJ did not err when he found that Plaintiff's bilateral knee pain was not a severe impairment. As explained by the ALJ in his Decision, *supra.*, Dr. Jurenovich last mentioned knee pain on April 23, 2013, fourteen months before the ALJ hearing, and then noted only that Plaintiff "still has some mild pain in both knees," for which he injected both of Plaintiff's knee with Synvisc on April 24, 2013. R. 408-09. Further, there was no mention of complaints of knee pain by Plaintiff's treating primary care physician, Dr. Todd Jones, M.D. ("Dr. Jones") in his treatment notes between February 15, 2013 and March 24, 2014. R. 418-482 and 511- 561. Indeed, the Court could not find any mention of knee pain in the medical evidence after Dr. Jurenovich's notes of April 24, 2013 and significantly, Plaintiff cites to none.

Moreover, even if the ALJ erred and Plaintiff's bilateral knee pain is a "severe" impairment, such an error on the part of the ALJ is harmless error in that the ALJ explained that in determining Plaintiff's residual functional capacity ("RFC"), he "considered the entire record," R. 16, and thus he considered the combined effects of all of Plaintiff's impairments, severe and non-severe, throughout the subsequent steps of the evaluation process, including Plaintiff's bilateral knee pain. See Sweeney v. Colvin, 2014 WL 4294507, *18 (M.D. Pa. Aug. 28, 2014) ("Generally, an error at step two is harmless because it is a threshold test. As long as one impairment is found to be severe, all medically determinable impairments are considered at subsequent steps, including non-severe impairments.") (citations omitted). Harmless errors do not require remand of a case to the Commissioner of Social Security. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

Additionally, while in making this argument, Plaintiff correctly notes that the ALJ failed to mention either that Dr. Jurenovich stated on July 17, 2012 that it was his impression that

Plaintiff had a "[t]orn meniscus, right knee, with effusion," or that the MRI of Plaintiff's right knee on February 9, 2013 stated "history-BL torn meniscus," I find that any such error also is harmless in light of the substantial evidence of record in this case that supports the ALJ's finding that Plaintiff's bilateral knee pain was non-severe including: (1) the stated Impression from the the February 9, 2013 MRI of "[v]ery mild chondromalacia of the patellafemoral and medial compartments without other internal derangement of the knee. No meniscal tear demonstrated; " (2) Dr. Jurenovich's diagnoses on April 16, 2013 and April 23, 2013 that Plaintiff had "mild DJD [degenerative joint disease];" (3) the lack of any mention of knee pain in Dr. Jones' treatment notes from February 2013 to March 2014 as discussed *supra*.; (4) Dr. Jurenovich's conclusion in four treatment notes between March 12, 2013 and April 24, 2013, when he had been treating Plaintiff for bilateral knee pain, that Plaintiff did not have "debility of activities of daily living;" and (5) the absence in the medical source statements completed by Drs. Jones and Dr. Jurenovich of any opinion by the treating physicians that Plaintiff's physical limitations were the result of knee pain. See R. 308, 399-400, 403, 405, 408, 414-417, 563-565, and 854.

Further, Plaintiff has failed to point to any particular restrictions imposed by her bilateral knee pain that were not accommodated by the residual functional capacity limitations set by the ALJ that included that Plaintiff can never climb a ladder, rope, or scaffold, can never crawl, can only occasionally climb ramps and stairs, can only occasionally balance, stoop, kneel, or crouch, will require a sit/stand option at the work station with intervals no more frequent that every 30 minutes, and must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards. R. 16.

In light of all of the above, I find that the ALJ properly assessed the medical evidence of record concerning Plaintiff's bilateral knee pain.

2.  **The ALJ's evaluation of the opinions of Drs. Jurenovich and Jones and CRNP Stebelton**

The Court turns next to Plaintiff's arguments concerning the ALJ's analysis of the opinions of Dr. Jurenovich, Dr. Jones, and Certified Registered Nurse Practitioner Stephanie Stebelton ("CRNP Stebelton"), who worked with Plaintiff's treating gastroenterologist Dr. Kirk Works, M.D. ("Dr. Works").

a.  **The identical medical source statements completed by Drs. Jones and Jurenovich.**

In identical medical source statements issued by Dr. Jurenovich on October 18, 2013 and Dr. Jones on January 17, 2014, each doctor indicated that Plaintiff: (1) occasionally could lift 10 pounds; (2) could stand and walk l hour or less (cumulative in an eight-hour day); (3) could sit 2 hours (cumulative in an eight-hour day); (4) was limited in upper extremity, in particular, "no grasping drops things, numbness" and "unable to fill things can not do;" (5) occasionally could bend and kneel and could never stoop, crouch, balance, or climb due to "severe neck pain MRI shows changes;" (6) was required to lie down 6 times a day for 60 minutes at a time;" (7) was limited in her ability to reach, handle, finger, feel and reach "as described severe radiculopathy in arms/hands," and was not limited in her ability to see, hear, speak, or taste/smell, and was not incontinent; and (8) could not do work involving moving machinery or vibration due to "numbness – weakness in arms/hands." R. 415-416, 563-565.  Both doctors further stated that Plaintiff had been disabled since July 12, 2013.[2]  R. 416, 565.  Dr. Jurenovich attached a September 27, 2013 MRI report regarding Plaintiff's "spine cervical" to his opinion. R. 417.  Dr. Jones did not attach any supporting documentation to his opinion.

---

[2] On July 17, 2013, Plaintiff underwent an anterior cervical discectomy at C5-C6 and C6-C7 with fusion, cages and plating. As explained by Dr. Adnan Abla, M.D., FACS ("Dr. Abla"), the surgeon who performed the procedure, in a May 22, 2013 letter to Dr. Jones "th[e] surgery is performed to relieve pressure on the nerves.  The nerves are not treated surgically.  Surgery is performed to arrest the progress of the disease. There are no guarantees regarding the degree of symptomatic relief." R. 501.

With respect to these identical medical source statements completed by Drs. Jurenovich and Jones, the ALJ concluded:

> While Dr. Jurenovich and Dr. Jones completed medical source statements indicating that the claimant is limited to lifting/carrying 10 pounds occasionally, standing/walking for less than 1 hour, and sitting for 2 hours with no crouching/balancing/stooping/climbing, up to six 60 minute breaks per day and limited pushing/pulling/reaching/handling/fingering/feeling, I give these opinions little weight because they are not supported by the claimant's medical records and detailed physical exam findings (Exhibits 12F, 17F, 29F). As mentioned above, the claimant has repeatedly seen Dr. Jones since her neck surgery with no abnormal physical exam findings and very few reports of neck pain or other symptoms that would cause such significant physical limitations. Dr. Jurenovich has only examined the claimant once since her surgery and, from his notes, seems to have largely expressed concerns about the claimant's narcotics use at this visit. The claimant has not returned to Dr. Jurenovich since August 2013, so his opinion likely does not reflect the claimant's current limitations.

R. 17.

Plaintiff contends that "the findings in the medical records set forth [in her Supporting Brief] more than adequately support these opinions regarding the claimant's cervical disc disease, bilateral knee pain, and chronic gastrointestinal disorder" and should have been given substantial weight.  Plaintiff's Supporting Brief, p. 10; Plaintiff's Reply Brief, p. 4.

The amount of weight accorded to medical opinions such as the opinions by Dr. Jurenovich and Dr. Jones, both treating physicians, is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to that of a non-examining source. 20 C.F.R. § 404.1527(c) and §416.927(c)(1). Additionally, the ALJ typically will give more weight to opinions from treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from the reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R.

§ 404.1527(c) and §416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. If a treating physician's opinion is not given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. 20 C.F.R. § 404.1527(c)(1)-(6) and § 416.927(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." 20 C.F.R. § 416.927(c)(4).

Furthermore, the Court of Appeals for the Third Circuit has explained:

A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where ... the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(c)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r. of Social Sec., 403 Fed. Appx. 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Social Security, 577 F.3d 500, 505 (3d Cir. 2009).

Additionally, while § 404.1527(c) sets forth the framework for the ALJ's assessment of medical opinion evidence and indeed instructs an ALJ to consider factors such as examining relationship, treatment relationship, supportability, consistency, and specialization, the regulation

does not dictate how the ALJ should memorialize his or her decision. Indeed, my colleague has specifically rejected such an argument. See Laverde v. Colvin, Civ. No. 14-1242, 2015 WL 5559984 at *6, n. 3 (W.D. Pa. Sept. 21, 2015) (Diamond, D.J.) (rejecting the idea that § 404.1527(c) requires an ALJ to "explicitly list" and discuss "each of the six factors set forth" in the regulation, declining to impose such a requirement, and finding that the ALJ need only adequately explain her evaluation of the medical evidence in such a manner so as to allow the court "to conduct meaningful review" and satisfy the court that "she adhered to the standards of § 404.1527(c)....").

Against this backdrop, I have reviewed the evidence of record and the reasons the ALJ stated for giving the identical medical source statements completed by treating physicians Dr. Jurenovich and Dr. Jones little weight and I conclude that the ALJ gave appropriate weight to these opinions and that substantial evidence supports the ALJ's decision to do so, i.e. contrary to Plaintiff's contention, the opinions are not well-supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the other substantial evidence of record. Specifically, as the ALJ explained, Plaintiff only saw Dr. Jurenovich one (1) time after her surgery, in August of 2013, and Dr. Jones's records post-surgery consistently noted that while Plaintiff either had neck pain or cervicalgia,[3] Plaintiff was not in distress and felt well and her neck was supple and had normal range of motion. Further, Dr. Jones noted on November 25, 2013 that Plaintiff's "[p]ain is adequately controlled on current regimen" and on January 17, 2014 and February 25, 2014, he noted that Plaintiff's extremities were normal on exam. See R. 522, 537, 543, 547, and 552. Additionally, on April 26, 2014, Plaintiff's mental health provider,

---

[3]"Cervicalgia is neck pain that occurs toward the rear or the side of the cervical vertebrae. It generally is felt as discomfort or a sharp pain in the neck, upper back or shoulders."
https://www.laserspineinstitute.com/back_problems/neck_pain/overview/cervicalgia/ (last visited on December 7, 2016).

PMHNP Terri Sharo noted in a Progress Note: that Plaintiff "continues to have chronic back pain and has to limit her activities," and "[m]ild pain is currently described. It cannot be ignored but does not interfere with concentration." R. 855.

**b. CRNP Stebelton's assessment of Plaintiff's gastrointestinal problems.**

On May 22, 2014, CRNP Stebelton check-marked "Yes" when asked whether the following statement was true:

> Despite continued treatment with daily medications Ms. Slaughenhoupt suffers from chronic gastrointestinal disorder that results in pain, pressure, fatigue, discomfort, dizziness, lightheadedness, loss of balance, bloody discharge and frequent bowel movements, these episodes occur on average five times a day during which time she is unable to perform any activities of daily living for ten to thirty minutes each time and occasionally an hour. It is reasonable to expect that Ms. Slaughenhoupt will experience these symptoms and limitations based on my clinical observations, review of medical history and appropriate tests.

R. 566. She did not submit any findings in response to the request to "[p]lease set forth medical findings that support the above evaluation." Id.

Concerning this "check the box" assessment completed by CRNP Stebelton, who worked with Dr. Works, Plaintiff's treating gastroenterologist, the ALJ concluded:

> As for the other opinion evidence, Ms. Stebelton, a CRNP, submitted a medical source statement indicating that the claimant's GI disorders would likely require at least five breaks a day lasting up to an hour each (Exhibit 18F). This opinion is given little weight in this assessment because it is unclear if Ms. Stebelton has treated the claimant in the past year and the objective medical evidence that shows good medication efficacy and few complaints about stomach problems since mid-2013 does not support her opinion.

R. 18-19.

Plaintiff argues that the ALJ provided an inadequate explanation for discounting the opinion of CRNP Stebelton concerning Plaintiff's gastrointestinal problems. Plaintiff's Supporting Brief, p. 10. "[H]e states that the objective medical evidence shows good medication efficacy and few complaints about stomach problems," but "[t]he extent of improvement with

medications is not explained by the ALJ; and therefor[e], there is an insufficient foundation for his suggestion that improvement equates to a refutation of Ms. Stebelton's opinion." Id. See also id. ("Without a proper foundation the implication that the claimant was capable of more activity than set forth in Ms. Stebelton's assessments, cannot form a basis for setting aside Ms. Stebelton's conclusions regarding the claimant's limitations."). Plaintiff further argues that substantial weight should have been given to this opinion because it is supported by the medical evidence of record and critiques the ALJ's failure to mention the finding of "very irregular bowels" in Dr. Works' notes on July 10, 2013. Plaintiff's Reply Brief, pp. 1 and 4; Plaintiff's Supporting Brief, p. 10.

The amount of weight accorded to an opinion such as that rendered by CRNP Stebelton is well-established. As a certified registered nurse practitioner, CRNP Stebelton is not "an acceptable medical source" in assessing a claimant's disability but, rather, is considered an "other source." SSR 06-03p. Social Security Ruling 06-03p, however, provides that an ALJ will consider evidence from such "other sources" such as CRNP Stebelton in determining whether a disability exists because such sources may provide insight into the severity of the impairment and the ability of the individual to function. As such, the ALJ should weigh this evidence with the rest of the evidence using the same factors used for evaluating medical source opinions, including: how long the source has known, and how frequently the source has seen the individual; how consistent the opinion is with the other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment; and any other factor that tends to support or refute the opinion. Id.

My review of the ALJ's Decision with respect to his assessment of CRNP Stebelton's opinion shows that the ALJ's statement that "the objective medical evidence . . . shows good medication efficacy" was adequately explained by the ALJ wherein he stated:

> She consulted with Dr. Works, a gastroenterologist, complaining of abdominal pain and bloating. On exam, the claimant had mild upper epigastric tenderness and decreased bowel sounds. Dr. Works diagnosed the claimant with gastritis and prescribed medication. The claimant followed up three months later and reported that the medications were helpful. Her physical exam was completely normal at this appointment, and Dr. Works instructed the claimant to continue her medications (Exhibit 9F). A more recent upper GI series showed a small hiatal hernia (Exhibit 23F/3). Dr. Jones continues to prescribe the claimant's digestive medications. While she testified that she had daily abdominal pain and frequently feels as though she has to rush to the restroom, she has not reported these problems to Dr. Jones and she has not followed-up with Dr. Works in a year, which suggests that her symptoms are not as severe as she alleged during the hearing.
.

R. 18. Furthermore, I have reviewed the evidence of record and the reasons the ALJ stated for giving CRNP's Stebelton opinion little weight and I conclude that the ALJ gave appropriate weight to her opinion and that substantial evidence supports the ALJ's decision to do so in that the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence of record. In particular: (1) Plaintiff did not return to Dr. Works for further treatment of any gastrointestinal issues after July 10, 2013, eleven (11) months before the ALJ hearing; (2) Dr. Jones's treatment records between August 20, 2013 and March 24, 2014, the last date Dr. Jones saw Plaintiff prior to the ALJ hearing, all consistently indicate that Plaintiff did not have any bowel or bladder symptoms and that Plaintiff was negative for gastrointestinal issues such as heartburn, nausea, vomiting, abdominal pain, diarrhea, constipation, blood in stool and melena; and (3) when Plaintiff was evaluated for her vocal cord surgery on February 3, 2014 by Dr. Gabriel Te, M.D., Dr. Te noted that Plaintiff was "[n]egative for abdominal pain, nausea, vomiting, diarrhea, [and] constipation,"

and her abdomen was "soft and nontender," with "normoactive" bowel sounds. See R. 380-82, 418-419, 425, 513, 529, 537, 543, 546, and 652-53. Finally, while Plaintiff is correct that the ALJ failed to mention that Dr. Works stated in a July 10, 2013 note that 3-4 months prior, Plaintiff had "very irregular bowels," I find that, in light of the just discussed evidence of record relative to Plaintiff's gastrointestinal issues post-July 2013, this error is harmless.

      c.   **Whether the ALJ improperly substituted his opinion for the opinions of Dr. Jurenovich, Dr. Jones, and CRNP Stebelton in determining Plaintiff's residual functional capacity?**

Plaintiff also argues that the ALJ improperly substituted his own opinion for the opinions of Plaintiff's treating medical personnel in determining what were Plaintiff's limitations. Plaintiff's Supporting Brief, pp. 12-13. See also Plaintiff's Reply Brief, p. 4 ("'A claimant's [RFC] is a medical question,' and an ALJ therefore is required to identify 'at least some . . . . evidence from a [medical] professional' in support of his RFC determination'.") (citation omitted).

An ALJ is not required to base his residual functional capacity (RFC") determination on an opinion from a medical source; the assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a). As applied to this case, in determining Plaintiff's RFC, the ALJ was free to reject the opinions of Dr. Jurenovich, Dr. Jones, and CRNP Stebelton, but after doing do, he was required to point to medical or other evidence of record that supported his determination of Plaintiff's RFC. This is exactly what the ALJ did; the ALJ pointed to the state agency physician's opinion for support as well as the treatment records of Drs. Jones, Abla, Jurenovich, and Te, and various medical

records and then determined, based on all of this relevant evidence, what was Plaintiff's RFC.

See R. 16-19.

> **3.** **The ALJ's failure to analyze Dr. Jones' April 23, 2014 statement concerning Plaintiff's gastrointestinal problems and November 29, 2013 "Physician's Certification."**

On April 23, 2014, Dr. Jones check-marked "Yes" when asked whether the following

statement was true:

> Despite continued treatment with daily medications Ms. Slaughenhoupt suffers from chronic gastrointestinal disorder that results in pain, pressure, fatigue, discomfort, dizziness, lightheadedness, loss of balance, bloody discharge and frequent bowel movements, these episodes occur on average five times a day during which time she is unable to perform any activities of daily living for ten to thirty minutes each time and occasionally an hour. It is reasonable to expect that Ms. Slaughenhoupt will experience these symptoms and limitations based on my clinical observations, review of medical history and appropriate tests.

R. 566. This is the identical statement that CRNP Stebelton also stated was true. R. 562. Like

CRNP Stebelton, Dr. Jones did not submit any findings in response to the request to "[p]lease set

forth medical findings that support the above evaluation." Id.

On November 29, 2013, Dr. Jones completed a "Physician's Certification" as part of

Plaintiff's "Discharge Application: Total and Permanent Disability." R. 854. On this

certification, Dr. Jones checked "yes" to the question "Does the applicant have a medically

determinable physical or mental impairment (as explained in Item 2 below) that (a) prevents the

applicant from engaging in any substantial gainful activity.in any field of work, and (b) can

be expected to result in death, or has lasted for a continuous period of not less than 60 months, or

can be expected to last for a continuous period of not less than 60 months?" Id. Dr. Jones then

provided a diagnosis of "Cervical Spondylosis & Cervicalgia," and explained Plaintiff's

limitations as follows:

> (a) Limitations on sitting, standing, walking or <u>lifting</u> [underlining by Dr. Jones]: The patient is able to sit, stand, and walk for only short periods of time. She must change positions frequently. She is unable to lift more than 2-3 lbs;
> (b) Limitations of activities of daily living: Unable to grasp – Drops things;
> (c) Residual functionality: Limited; [and]
> (d) Social/Behavioral limitations, if any: Limited D/T dizziness and disequilibrium.

<u>Id</u>.

The ALJ did not discuss either of these two (2) documents in his Decision, an omission not raised by either Plaintiff or Defendant. An ALJ must analyze all evidence relevant to a claimant's case and adequately explain his reasons for declining to credit "pertinent evidence" which favors a claimant's position. <u>Burnett v. Commissioner of Social Security</u>, 220 F.3d 112, 121 (3d Cir. 2000). "'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" <u>Burnett</u>, 220 F.3d at 121-122 (quoting <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981)). Without the same, a reviewing court cannot make a proper determination. <u>Id</u>.

Dr. Jones' April 2014 statement and November 2013 certification are relevant evidence which favors Plaintiff's position. Therefore, the ALJ erred when he failed to mention, let alone evaluate these opinions in reaching his decision that Plaintiff was not disabled. That said, I further find that the error was harmless in that, for the reasons stated above with respect to my analysis of Drs. Jurenovich and Jones' identical medical source statements and CRNP Stebelton's assessment, these opinions by Dr. Jones are not well-supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the other substantial evidence of record. Accordingly, it is not necessary to remand this matter for review of these assessments.

B. **Whether the ALJ failed to adequately explain his conclusion that Plaintiff's testimony at the ALJ hearing was less than fully credible and whether the medical evidence established an adequate foundation for Plaintiff's testimony?**

Finally, I turn to Plaintiff's contention that the ALJ did not adequately explain why he found Plaintiff's testimony at the ALJ hearing to be less than fully credible and that the medical evidence establishes an adequate foundation for her testimony. Plaintiff's Supporting Brief, p. 14.

With respect to Plaintiff's credibility, the ALJ stated:

The claimant testified that she is unable to work due to neck and back pain, stomach problems, numbness and tingling in her hands, and asthma. The claimant testified that she has to change positions every 15 to 20 minutes and that she frequently sits in a recliner to elevate her feet throughout the day. She estimates that she is able to walk less than 50 yards before she has to rest for up to 20 minutes. The claimant testified that she also has daily stomach pain and frequently has to use the restroom. Her hands constantly feel numbness and tingling causing problems with her grip and fine finger movements. The claimant uses an inhaler for her asthma and recently had surgery on her vocal cords. She testified that she tries to limit her speaking but she is still having problems with her voice.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

While the claimant testified that she has constant pain in her neck and back, with her neck pain radiating down to her hand causing numbness and tingling, she has not reported similar symptoms to her physicians. While the claimant has a long history of neck pain, she underwent surgery in July 2013 and has not regularly followed up with her surgeon or reported neck pain or hand numbness/tingling to her other physicians since the surgery. Dr. Jurenovich originally treated the claimant's neck pain by prescribing Vicodin. In September 2011, he ordered an MRI and EMG testing. The MRI showed only mild disc bulges at C5-C6 and C6-C7 with no disc herniations, while the upper extremity EMG/nerve conduction test was completely normal with no signs of radiculopathy or other nerve problems (Exhibit 2F/ 11-14).

After the testing, the claimant saw Dr. Jurenovich once, but then did not return to his care for her neck pain until December 2012, and he preferred cervical paraspinal injections as the best treatment option (Exhibit 2F/ 10). The claimant consulted with a neurosurgeon in mid-2013 and underwent a cervical fusion surgery in July 2013 with Dr. Abla. After the surgery, Dr. Abla instructed the claimant to attend physical therapy, but she only attended one session. The claimant reported some neck pain and arm numbness, but a repeated MRI was normal but for the fusion hardware (Exhibit 12F/4; 15F/3). Dr. Abla stressed to the claimant that her MRI showed no new problems and the importance of regularly attending a physical therapy program at their last appointment, but the claimant did not follow this instruction (Exhibit 14F/34-35). The claimant has not started physical therapy and has since only treated with Dr. Jones, her primary care physician. The claimant has not reported neck pain or any numbness or tingling to Dr. Jones, and he has repeatedly noted that the claimant has good cervical range of motion in his treatment notes and no abnormalities on exam (Exhibits 13F/1-4; 15F/24-28; 16F/6, 13, 22, 32).

R. 17.

It is well established that the ALJ is charged with the responsibility of determining credibility. Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981); Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ must consider "the entire case record" in determining the credibility of an individual's statement. SSR 96-7p. In evaluating whether a plaintiff's statements are credible, the ALJ will consider evidence from treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. § 416.929(c); SSR 96-7p. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. Id. I must defer to the ALJ's credibility determinations, unless they are not supported by substantial evidence. Smith, 637 F.2d at 972; Baerga, 500 F.2d at 312.

Contrary to Plaintiff's contention, I find that in reaching his decision that Plaintiff's testimony about her symptoms was not entirely credible, the ALJ followed the proper method required by 20 C.F.R. 416.929 and SSR 96-7p. For example, the ALJ considered Plaintiff's complaints/symptoms and found them to be inconsistent with the medical evidence. <u>See</u> R. 17. Moreover, based on the entire record as a whole, I find that there is substantial evidence to support the ALJ's decision that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. Therefore, the Court finds no error in this regard.

## IV. CONCLUSION

Based on the Record as a whole, the ALJ's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment shall be denied and the Commissioner's Motion for Summary Judgment shall be granted. An appropriate Order follows.

<strong><u>ORDER OF COURT</u></strong>

AND NOW, this 7th day of December, 2016, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment [ECF 9] is DENIED and Defendant's Motion for Summary Judgment [ECF 11] is GRANTED.

BY THE COURT:

S/Donetta W. Ambrose_____
Donetta W. Ambrose
United States Senior District Judge